IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSITY OF PITTSBURGH, | ) |
|     Plaintiff, | ) |
| | ) |
|     vs | ) Civil Action No. 04-1616 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
|     Defendant. | ) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No. 20) be granted as to payments made under its early retirement plans to tenured faculty and administrators holding faculty tenure in exchange for the voluntary relinquishment of their tenure rights and denied in all other respects, that the defendant's motion for summary judgment (Docket No. 19) be granted as to payments made to faculty librarians under the plaintiff's early retirement plans and denied in all other respects, and that by November 1, 2005, the plaintiff submit a refund claim consistent with this Report and Recommendation.

II. Report:

Presently before the Court are cross-motions for summary judgment. To resolve the parties' motions, we must determine if the defendant, United States of America, erroneously collected Federal Insurance Contribution Act ("FICA") taxes from the plaintiff, University of Pittsburgh (the "University"), based on early retirement payments made by the University to its faculty members.

The record shows that between 1982 and 1999, the University established five

early retirement plans as an incentive to its faculty members to retire early (the "Retirement Plans"). The Retirement Plans provided a specific term of payment to eligible faculty members in exchange for the voluntary relinquishment of their tenure rights.

Between 1996 and 2001, the University made payments to faculty members under its early Retirement Plans and assumed the payments constituted wages, whereupon it remitted to the defendant the employee and employer portions of FICA taxes. In 2001, however, the University believed its payments made to faculty members in connection with its early Retirement Plans did not constitute wages subject to FICA taxation. Thus, the University filed claims with the Internal Revenue Service ("IRS"), seeking a refund of all FICA taxes paid to the defendant from 1996 through 2001, which totals more than $2 million. The IRS disallowed the University's refund requests, after which the University filed suit against the defendant.[1]

The University contends that the defendant erroneously collected FICA taxes in connection with its early Retirement Plans, for which it demands judgment of $2,196,942.78 as a refund for FICA taxes paid. Conversely, the defendant insists that FICA taxes were not erroneously collected in this matter. Hence, the parties have filed cross-motions for summary

---

1. The University commenced two civil actions against the United States seeking a refund of FICA taxes paid under its Retirement Plans. In Civil Action 04-1616, the University sought a refund of FICA taxes paid between January 1, 1996 through December 31, 2000. In Civil Action 05-499, the University sought a refund of FICA taxes paid from January 1, 2001 through June 30, 2001. In an Order dated May 11, 2005, the Court consolidated the cases filed by the University at C.A. 04-1616 and directed that C.A. 05-499 be marked closed. In addition to seeking a refund for FICA taxes paid in C.A. 04-1616, the University sought a declaratory judgment that its payments made to tenured faculty members who participated in its early Retirement Plans since 1996 were not wages subject to FICA taxes. In response thereto, the defendant moved for judgment on the pleadings, arguing that the plaintiff's request for a declaratory judgment cannot lie, as it is barred by the Declaratory Judgment Act, 28 U.S.C. § 2201(a). In an Order dated March 2, 2005, the Court granted the defendant's motion for judgment on the pleadings on the plaintiff's request for a declaratory judgment.

judgment. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); <u>Biener v. Calio</u>, 361 F.3d 206, 210 (3d Cir. 2004).

This dispute turns on whether the University's payments to faculty members under its early Retirement Plans constitute "wages" subject to FICA taxes. FICA taxes are imposed on "wages" received by an employee "with respect to employment." 26 U.S.C. § 3102. For purposes of FICA, the term "wages" means "all remuneration for employment". 26 U.S.C. § 3121(a). The term "employment" means "any service, of whatever nature, performed by an employee for the person employing him." 26 U.S.C. § 3121(b).

The United States argues that since the University's payments to its faculty members arose from the employment relationship between them and were earned through the faculty members' services to the University, the payments constituted "remuneration for employment" or "wages". In contrast, the University asserts that its payments were made to purchase a protected property interest, namely: its faculty members' tenure, such that the payments did not constitute "wages", but were made in exchange for the relinquishment of its faculty members' tenure rights.

To date, it appears that the Eighth Circuit Court of Appeals is the only federal Appeals Court to have addressed the issue of whether payments made to tenured faculty, in exchange for the relinquishment of their tenure rights, are subject to FICA taxes. In <u>North Dakota State University v. United States of America</u>, 255 F.3d 599 (8th Cir. 2001), the Court held that payments made to tenured faculty under an Early Retirement Program offered by North Dakota State University ("NDSU") were <u>not</u> subject to FICA taxes, as the payments "were made

in exchange for the relinquishment of their contractual and constitutionally-protected tenure rights rather than as remuneration for services to NDSU." Id. at 607.

In so ruling, the Court in North Dakota State Univ. examined three IRS revenue rulings relevant to this dispute and stated as follows:

> In Revenue Ruling 58-301, an employee entered a five-year employment contract. See Rev. Rul. 58-301, 1958-1 C.B. 23, 1958 WL 10630. The employer and the employee agreed to cancel the contract in the second year. The employer paid the employee a lump sum in exchange for the employee's relinquishment of his contract rights. The IRS determined that the lump sum payment was not FICA wages, or remuneration for employment, but consideration for relinquishing rights under the contract, i.e., the right to be employed for the full five years. Thus, in view of the IRS, payments to relinquish rights under a contract are not wages for FICA purposes.

Id. at 603-04 (citations omitted).

> In Revenue Ruling 74-252, the IRS determined that payments made to an employee after his employer terminated his three-year employment contract were FICA wages. See Rev. Rul. 74-252, 1974-1 C.B. 287, 1974 WL 34867. The contract provided that the employer could terminate the employee during the term of the contract as long as it paid the employee an additional six months salary, which it did. The IRS distinguished Revenue Ruling 58-301 by characterizing it as payment for 'the relinquishment of interests the employee had in his employment contract in the nature of property.' Conversely, the case before the IRS in Revenue Ruling 74-252 involved payments made under the contract. Thus, in the IRS' view, payments made pursuant to an employment contract are wages for FICA purposes.

Id. at 604 (citation omitted).

> In Revenue Ruling 75-44, a railroad employee received a lump sum payment in exchange for relinquishing seniority rights gained from his prior service under a general contract of employment. See Rev. Rul. 75-44, 1975-1 C.B. 15, 1975 WL 34658. The employee was an at-will employee who had acquired the rights to security in his

4

>employment and to additional pay or other recognition based on
>longevity; however, the railroad had no obligation to maintain the
>relationship.  The railroad paid the employee a lump sum to transfer
>to a different position and to forego his seniority rights.  The IRS
>determined that the lump sum payment constituted remuneration
>for services for purposes of the Railroad Retirement Tax Act, the
>equivalent of FICA for railroad employees, because the rights given
>up were those earned by past service or seniority.  The payment was
>similar to a severance package, which rewarded an employee for
>past service.  Thus, according to the IRS, payments for past
>services, or seniority rights, are wages for FICA purposes.

Id. (citation omitted).

In North Dakota State Univ., the parties agreed that tenure is a protected property right, affording tenured faculty a constitutional right to be free from discharge for arbitrary reasons.  Id. at 605.  NDSU policy also provided that tenured faculty could not be terminated absent fiscal restraints or adequate cause.  Id.  Thus, after examining the aforesaid IRS revenue rulings, the Eighth Circuit Court of Appeals opined:

>Under the terms of [NDSU's] Early Retirement Program, the
>tenured faculty received a negotiated amount of money in
>exchange for giving up their constitutional and contractual rights
>to tenure.  In other words, they relinquished their tenure rights.
>They did not receive what they were entitled to under their contracts,
>which was continued employment absent fiscal constraints or
>adequate cause for termination.  Rather, they gave up those rights,
>making this case more analogous to Revenue Ruling 58-301 than to
>Revenue Ruling 74-252.

Id. at 607.  Accord, Klender v. United States, 328 F.Supp.2d 754, 765-67 (E.D.Mich. 2004) (relying on North Dakota State Univ. to hold that payments made to Michigan public school teachers in exchange for the relinquishment of their tenure rights under school districts' early retirement incentive plans were not wages subject to FICA tax); but see, Appoloni v. United States, 333 F.Supp.2d 624, 631-32 (W.D.Mich. 2004) (finding that in contrast to the tenure

requirements in North Dakota State Univ., tenure under Michigan law was tied exclusively to the employee's performance of past satisfactory services, such that the payments were wages for purposes of FICA, as they were more akin to Rev. Rul. 75-44 than to Rev. Rul. 58-301).

Here, under the University's policy and bylaws, tenure is a lifetime appointment; and absent an agreement to voluntarily relinquish tenure, tenured faculty members may only be terminated for cause or financial exigency after a due process hearing.[2]  Thus, as in North Dakota State Univ., tenured faculty members at the University have a contractual and constitutionally protected property interest in continued employment.  See, McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 1995), cert. denied, 516 U.S. 1146 (1996) (holding that tenured faculty member at Delaware County Community College "had a constitutionally protectible property interest in continued employment as a tenured professor at the college"); and Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 401 (3d Cir. 1992) (holding that "a contract that confers a protected status, such as a tenure contract providing for permanent employment" is a property interest protected by the Fourteenth Amendment).

Participation in the University's Retirement Plans was limited to full-time and part-time tenured faculty members, full-time administrators holding faculty tenure, and full-time and part-time faculty librarians whose contract provides the expectation of continuing employment.[3]  Pursuant to University policy, tenure "constitutes recognition by the University that a person so identified is qualified by achievements and contributions to knowledge as to be ranked among the most worthy of the members of the faculty engaged in scholarly endeavors:

---

2. See, plaintiff's concise statement of facts at ¶¶ 8-9 (with citations to the record therein).

3. See, defendant's statement of facts at ¶¶ 5-6 (with citations to the record therein).

research, teaching, professional training and creative intellectual activities of other kinds."[4]  The tenure stream at the University is seven years, during which time faculty members are evaluated at least annually.[5]  Tenure is not automatically granted; and at the end of the tenure stream, a faculty member may be terminated if he or she does not meet the requirements for tenure.[6]

The Retirement Plans were based on eligible faculty members' age and years of service and provided them an opportunity to retire voluntarily prior to the mandatory retirement age.[7]  To participate in the Retirement Plans, tenured faculty members had to complete a Contract for Participation during the applicable window of time, and a decision to enter a Plan was irrevocable.[8]  To participate in the Retirement Plans, tenured faculty members had to voluntarily relinquish their tenure rights, including continued employment absent adequate cause for termination or financial exigency.[9]

Based on the foregoing, we find that payments made by the University to tenured faculty and administrators holding faculty tenure under the Retirement Plans are not subject to FICA taxes.  That is because, as in North Dakota State Univ., the payments are analogous to Rev. Rul. 58-301, in that they were made in exchange for the relinquishment of contractual and constitutionally-protected tenure rights rather than as remuneration for services to the

---

4.   See, plaintiff's concise statement of facts at ¶ 6.

5.   Id. at ¶ 3.

6.   Id. at ¶ 5.

7.   Id. at ¶ 12.

8.   Id. at ¶¶ 14-15.

9.   Id. at ¶ 13.

University.[10]

      While the ruling in North Dakota State Univ., is adverse to its position, the Government makes several arguments to support its stance that payments made under the Retirement Plans are subject to FICA taxes. Specifically, the defendant asserts that the payments made under the Retirement Plans constitute wages because: they are based on each employee's salary and length of service; they are in consideration for past employment and not in exchange for property rights; they arose from the employment relationship between the University and its faculty members, so as to constitute "remuneration for employment"; and the payments are not limited to tenured faculty, but are also available to non-tenured faculty librarians.

      As to the first of these arguments, the record shows that amounts paid under the Retirement Plans were based on an employee's age, years of service and salary.[11] The defendant insists that since these payments were computed based on factors traditionally associated with

---

10. As mentioned above, Rev. Rul. 58-301 held that a lump sum payment received by an employee as consideration for the cancellation of his employment contract was not subject to FICA taxation. The Third Circuit Court of Appeals has counseled: "[C]ourts are to give weight to IRS revenue rulings but may disregard them if they conflict with the statute they purport to interpret or its legislative history, or if they are otherwise unreasonable." Geisinger Health Plan v. C.I.R., 985 F.2d 1210, 1216 (3d Cir. 1993). Interestingly, Revenue Ruling 2004-110 (released November 23, 2004 and published December 13, 2004) modified and superceded Rev. Rul. 58-301. Revenue Ruling 2004-110 holds that "an amount paid to an employee as consideration for cancellation of an employment contract and relinquishment of contract rights is ordinary income, and wages for purposes of FICA". Rev. Rul. 2004-110, 2004-50 I.R.B. 960, 2004 WL 2659667. Significantly, Rev. Rul. 2004-110 has no bearing on this case. Indeed, Rev. Rul. 2004-110 provides that the IRS "will not apply the position adopted in this ruling to any payment that an employer made to an employee or former employee before January 12, 2005, provided that the payment is made under facts and circumstances that are substantially the same as in ... Rev. Rul. 58-301." Since payments made under the University's Retirement Plans occurred prior to January 12, 2005, we give weight to Rev.Rul. 58-301.

11. See, Exhibits 6-10 to the plaintiff's appendix in support of its present motion.

determining compensation, i.e., salary and length of service, and as the payments were made within the context of the employer-employee relationship, they constitute wages for purposes of FICA. The Government made a similar argument in <u>North Dakota State Univ.</u>, and the Eighth Circuit Court of Appeals responded accordingly:

> Although we have previously relied on the method used to calculate a payment to determine whether it is subject to FICA taxation, particularly when the payment is measured by factors traditionally associated with compensation, those cases involved at-will employees. *See* <u>Mayberry [v. United States]</u>, 151 F.3d [855] at 860 [8th cir. 1998] (holding that payments in class action settlement of an ERISA claim to at-will employees were FICA wages where each class member's award was based on the member's length of service with the employer); <u>The Lane Processing Trust v. United States</u>, 25 F.3d 662, 665-66 (8th Cir. 1994) (holding that payments to employees, from a trust set up by their employer with the agreement that the trust funds would be distributed to employees who agreed to stay on at reduced wages, were FICA wages where the funds were allocated between the employees based on length of service and position with the company). The tenured faculty in the case at hand clearly were not at-will employees. They were protected by a contractual relationship with NDSU and by constitutional principles of procedural and substantive due process... Thus, although the method used to calculate a payment is relevant to whether the payment is wages for FICA purposes, it is not dispositive, *see* <u>Associated Elec. [Coop., Inc. v. United States]</u>, 226 F.3d [1322] at 1328 [(Fed.Cir. 2000)], and we do not deem the inclusion of past performance and current salary as some of the factors in the decisional mix here to be controlling in this case.

<u>North Dakota State Univ.</u>, 255 F.3d at 606-607.

Likewise here, tenured faculty and administrators holding faculty tenure who received payments under the University's Retirement Plans were not at-will employees; instead, they had contractual and constitutionally-protected tenure rights in continued employment which they relinquished in exchange for payments under the Plans. Thus, payments to them were not

wages subject to FICA taxes.

The Government's next argument: that payments under the Retirement Plans were made in consideration for past employment and not in exchange for property rights, also was addressed and rejected by the Court in North Dakota State Univ. as follows:

> Although past service plays a part in the decision to grant tenure, tenure is much more than a recognition for past services. Importantly, tenure is not automatic upon completing service for a specified time period which is a hallmark of ordinary seniority rights. Prior to an award of tenure, a professor is employed pursuant to one-year contracts for a period of time, generally six years at NDSU. [As mentioned above, the tenure stream at the University is seven years.] Th[ose] years during which a professor teaches before being granted tenure is not consideration for the grant of tenure. Rather, it is ordinarily a prerequisite for tenure and serves as a probationary period during which the university may evaluate the professor to determine whether he or she has the qualities necessary to be worthy of tenure. After serving the probationary period, the professor must still qualify for tenure through his or her scholarships, research, and service to the university and society... At the end of the probationary period, the professor's contract is either not renewed and the professor discontinues teaching at the university, or the professor is granted tenure and a lifetime appointment, as long as the grounds for removal are not triggered...
>
> Thus, contrary to the government's argument that tenure rights are earned by past service to the university, tenure rights are established at the outset of the tenured relationship. Tenure is a recognition of contributions to the academic world and is given in exchange for continuing contributions... It is this unique relationship and its accompanying rights, formed only when and if tenure is granted, that give tenure its significance and value. Because we reject the government's underlying premise that tenure accrues over time and is similar to seniority, we reject its argument that Revenue Ruling 75-44 should control the outcome of this case.

North Dakota State Univ., 255 F.3d at 605-606.

Here too, payments made by the University under the Plans to tenured faculty and

administrators holding faculty tenure were not in consideration for their past service to the University; rather, the payments were made in exchange for the relinquishment of protected property rights: their tenure, which was a lifetime appointment.  Such payments are analogous to Rev. Rul. 58-301 and are not subject to FICA taxation.

The Government also argues that payments under the Plans are taxable under FICA, as they arose from the employment relationship between the University and its faculty members and constitute remuneration for employment.  In North Dakota State Univ., the Court noted that the terms "wages" and "employment" are to be read broadly to further the purposes behind the Social Security Act.  255 F.3d at 603, citing Soc. Sec. Bd. v. Nierotko, 327 U.S. 358, 365 (1946).  However, "not all payments by employers to employees constitute wages".  North Dakota State Univ., 255 F.3d at 603, citing Cent. Ill. Pub. Serv. Co. v. United States, 435 U.S. 21, 25 (1978) (stating:"Wages usually are income, but many items qualify as income and yet clearly are not wages.").  Certainly, to be subjected to FICA taxes, "[t]he payments must be remuneration for services provided by the employee to his employer".  North Dakota State Univ., 255 F.3d at 603.

As recited above, the University's payments to tenured faculty and administrators holding faculty tenure were not made to compensate those employees for their past service to the University.  Rather, the University made payments to those employees under the Plans in exchange for the relinquishment of their protected property rights in continued employment.

Conversely, with respect to the University's payments to non-tenured faculty librarians under the Plans, we agree with the Government that such payments constitute "wages" for purposes of FICA.  That is because such payments were not made in exchange for the

relinquishment of protected property rights.

The record shows that participation in the Retirement Plans was limited to full-time and part-time tenured faculty members, full-time administrators holding faculty tenure, and full-time and part-time faculty librarians "whose contract provides the expectation of continuing employment."[12] There is a distinction between tenured and non-tenured faculty members at the University, as tenure can only be held by faculty members appointed to the ranks of professors and associate professors.[13] Tenure at the University is a lifetime appointment; and absent an agreement to voluntarily relinquish tenure, tenured faculty members may only be terminated for cause or financial exigency after a due process hearing.[14]

In contrast, non-tenured faculty librarians who participated in the Plans had contracts which merely provided an "expectation of continuing employment"[15]; no evidence shows that their contracts provided a lifetime appointment, nor continuing employment absent cause. The United States Supreme Court has explained: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Here, the University's tenured faculty have a legitimate claim of continued employment absent cause or financial exigency, whereas non-tenured librarians have only an expectation of continuing employment.

---

12.  See, defendant's statement of facts at ¶¶ 5-6 (with citations to the record therein).

13.  Id. at ¶ 14.

14.  See, plaintiff's concise statement of facts at ¶¶ 8-9 (with citations to the record therein).

15.  See, defendant's statement of material facts at ¶ 6.

The Third Circuit Court of Appeals has stated: "only two types of contracts have been found to be property protected by the Fourteenth Amendment. The first is a contract that confers a protected status, such as a tenure contract providing for permanent employment. The second is a contract explicitly providing that it may be terminated only for cause." Sanguigni, supra, 968 F.2d at 401. The University has failed to show that the employment contracts of its non-tenured faculty librarians fall into either of the above categories. Thus, since it appears that payments to faculty librarians under the Plans were not made in exchange for the relinquishment of protected property rights, the payments constitute "wages" subject to FICA taxation.

It is well settled that in a refund suit, as here, the taxpayer has the burden "of proving not only an entitlement to a refund but also the amount of the entitlement." Tunnell v. U.S., 511 F.2d 1192, 1194 (3d Cir. 1975). Indeed, "[t]he taxpayer must produce credible evidence from which a proper calculation can be made before he is entitled to a refund." Todd v. U.S., 617 F. Supp. 253, 256 (W.D.Pa. 1985). Here, the University submitted evidence of its refund claim based on FICA taxes paid to the defendant from 1996 through 2001, which pertain to payments made to both tenured and non-tenured faculty members under its Retirement Plans.[16] However, there is no evidence showing the amount of FICA taxes paid to the defendant during the applicable time period which concern only payments made to tenured faculty and administrators holding faculty tenure.

Therefore, it is recommended that the plaintiff's motion for summary judgment be granted as to payments made under its Retirement Plans to tenured faculty and administrators holding faculty tenure in exchange for the voluntary relinquishment of their tenure rights and

---

16. See, Exhibits 11-32 to the plaintiff's appendix in support of its present motion.

denied in all other respects, that the defendants's motion for summary judgment be granted as to payments made to faculty librarians under the plaintiff's Retirement Plans and denied in all other respects, and that by November 1, 2005, the plaintiff submit a refund claim consistent with this Report and Recommendation.

Within ten (10) days after November 1, 2005, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ROBERT C. MITCHELL
United States Magistrate Judge

Dated: October 18, 2005